TAYLOR, J.
Bruce and Janet Harrington appeal a summary final judgment entered in favor of Citizens Property Insurance Corporation in a declaratory judgment action brought by the Harringtons to establish liability coverage under a Citizens’ policy for an accident that occurred at their residence. Because the trial court erred in interpreting the policy language, we reverse.
The Harringtons owned real property in West Palm Beach at 477 Mozart Road (“the Mozart property”), their primary residence, and at 301 Vallette Way (“the Vallette property”), their rental property, where they did not live. Citizens issued the Harringtons a homeowners insurance policy with personal liability limits of $300,000. Stuart Williams was seriously injured on the Mozart property while performing work. Williams filed a claim against the Harringtons, who, in turn, sought liability coverage under the Citizens policy. Citizens denied coverage, contending that the policy covered only the Vallette property. The Harringtons filed a complaint against Citizens, seeking declaratory relief that the Mozart property was an “insured location,” as defined by the policy; thus, the policy provided liability coverage for Williams’s accident under “Coverage L — Personal Liability” and “Coverage M — Medical Payments to Others.” The complaint further alleged breach of the insurance policy.
“Insured Location” is defined in the policy as:
a. the “residence premises”; [or]
b. the part of other premises, other structures and grounds used by you as a residence, and:
(1) which is shown in the Declarations; ....
The Harringtons moved for final summary judgment, arguing that the Mozart premises fell under the definition of “insured location,” despite Citizens’ contention that the Mozart property was not listed in the Declarations as the “residence premises.” Asserting that the Mozart property was not covered, Citizens moved for summary judgment. After a hearing, the trial court ruled that Citizens was entitled to final summary judgment as a matter of law and denied the Harringtons’ motion for summary judgment. The court stated that “it is so abundantly clear that when [Plaintiffs] walked in they were seeking insurance not on the ... Mozart Road house ... but they were seeking insurance on the [Vallette] Way property. I do not believe the policy is so ambiguous as to be required an interpretation to find that there is coverage for the worker’s injury *1001 on the Mozart Way property. And the policy applies to the [Vallette] Way property in West Palm Beach. So, I’m going to deny the Plaintiffs Motion for Summary Judgment and grant the Defendant’s Motion for Summary Judgment.” The court entered its written order, finding that “[b]ased upon the pleadings, depositions, exhibits, affidavits and other matters of record in this action, there is no genuine issue of material fact. It appears from the terms and conditions of the Citizens homeowners insurance policy at issue in this matter, that there is no coverage for the claim as presented by the allegations of the Complaint in this cause.”
The Harringtons appealed, arguing that the court erred in its interpretation of the policy and that the Mozart property was covered by the policy. They contend that the Vallette property met the definition of “residence premises” and “insured location.” “The standard of review for summary judgment orders is de novo.” Sulkin v. All Fla. Pain Mgmt., Inc., 932 So.2d 485, 486 (Fla. 4th DCA 2006). Questions of insurance policy interpretation — legal questions — are subject to de novo review. Penzer v. Transp. Ins. Co., 29 So.3d 1000, 1005 (Fla.2010).
Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000) (citing Menendez v. Palms W. Condo. Ass’n, 736 So.2d 58 (Fla. 1st DCA 1999)). Summary judgment should be granted where “ ‘the facts are so clear and undisputed that only questions of law remain.’ ” Sulkin, 932 So.2d at 486 (quoting Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999)). Further, the record must be reviewed by the appellate court in a light most favorable to the non-moving party. Id. (citing City of Lauderhill v. Rhames, 864 So.2d 432, 434 n. 1 (Fla. 4th DCA 2003)). Florida Rule of Civil Procedure 1.510(c) (2009) provides that the parties may rely on “affidavits, answers to interrogatories, admissions, depositions, and other materials as would be admissible in evidence.”
An insurance contract “ ‘must be construed in accordance with the plain language of the policy.’ ” Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005) (quoting Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003)). The policy terms “should be given their plain and unambiguous meaning as understood by the ‘man-on-the-street.’ ” State Farm Fire & Cas. Co. v. Castillo, 829 So.2d 242, 244 (Fla. 3d DCA 2002). The Third District explained:
“A court may resort to construction of a contract of insurance only when the language of the policy in its ordinary meaning is indefinite, ambiguous or equivocal. If the language employed in the policy is clear and unambiguous, there is no occasion for construction or the exercise of a choice of interpretations. In the absence of ambiguity ... it is the function of the court to give effect to and enforce the contract as it is written.”
Id. (quoting U.S. Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d DCA 1976)) (alteration in original). If the language is ambiguous, the contract should be construed in favor of the insured [1]; but if it is unambiguous, it must be given effect as *1002 written. Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 735 (Fla.2002), Courts may not “ ‘rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.’” State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc., 678 So.2d 397, 403 (Fla. 4th DCA 1996) (quoting State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986)).
Florida courts apply an “objective” theory of contractual intent when interpreting insurance policies, which are contracts between the insured and the carrier: “ ‘The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not the parties having meant the same thing but on their having said the same thing.’ ” Id. at 400 (quoting Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957)) (internal quotations omitted). Thus, meaning is derived from the parties’ unambiguous language, not from their subjective understandings. Id. Here, when the court stated that “it is so abundantly clear that when [Plaintiffs] walked in they were seeking insurance not on the ... Mozart Road house ... but they were seeking insurance on the [Vallette] Way property,” the court appeared to have been considering the parties’ subjective intent, rather than applying an objective interpretation of the policy language.
If an insurer does not define a policy term, “the insurer cannot take the position that there should be a ‘narrow, restrictive interpretation of the coverage provided.’ ” State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998) (quoting State Comprehensive Health Ass’n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997)). Further, we explained as follows:
Strict construction does not mean that a court must always find coverage. Strict construction does not mean ... that clear words may be tortured into uncertainty so that new meanings can be added. Where the insurer has defined a term used in the policy in clear, simple, non-technical language, ... strict construction does not mean that judges are empowered to give the defined term a different meaning deemed more socially responsible or desirable to the insured.
Deni Assocs., 678 So.2d at 401.
If more than one interpretation could be given to the policy provision, an ambiguity results. State Farm Fire & Cas. Co. v. Metro. Dade Cnty., 639 So.2d 63, 65 (Fla. 3d DCA 1994) (citing Ellsworth v. Ins. Co. of N. Am., 508 So.2d 395, 400 (Fla. 1st DCA 1987)). The Florida Supreme Court explained ambiguity:
“If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous.” To find in favor of the insured on this basis, however, the policy must actually be ambiguous. “A provision is not ambiguous simply because it is complex or requires analysis.... ‘[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms.’ ”
Penzer, 29 So.3d at 1005 (quoting Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla.2007)) (alterations and emphasis in original).
First, we disagree with the Har-ringtons’ argument that the Mozart property falls under the definition of “residence premises. The policy defines “residence premises” in pertinent part as:
a. the one family dwelling, other structures and grounds; or
b. that part of any building;
where you reside and which is shown as the “residence premises” in the Declarations.
*1003 The word “and” is used to join the elements of “where you reside” and “which is shown as the ‘residence premises’ in the Declarations”; “and” is a conjunction to mean that both elements must be met. Based on the plain, unambiguous meaning, to meet the definition, one must both reside in the dwelling, and that location must be shown as the “residence premises” in the Declarations. The Mozart property does not meet this definition. Although the Harringtons reside in the Mozart property, the Mozart property was not shown as the “residence premises” in the Declarations.
We agree, however with the Har-ringtons’ next argument that the Mozart property falls under subsection (b)(1) of the “Insured Location” definition, which states as follows:
“Insured Location” is defined in the policy as:
b. the part of other premises, other structures and grounds used by you as a residence, and:
(1) which is shown in the Declarations; ....
The Mozart property, based on the plain, unambiguous meaning, falls under this definition. First, the provision includes “the part of other premises, other structures and grounds.” “Premises” are not defined in the insurance policy. The Florida Supreme Court stated that “ ‘[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.’ ” Swire Pac. Holdings, 845 So.2d at 166 (quoting CTC Dev. Corp., 720 So.2d at 1076). Insurance policy terms must be given their every day meaning and should be read with regards to ordinary people’s skill and experience. Watson v. Prudential Prop. & Cas. Ins. Co., 696 So.2d 394, 396 (Fla. 3d DCA 1997) (citing Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636, 638 (Fla. 3d DCA 1994)). Florida courts will often use legal and non-legal dictionaries to ascertain the plain meaning of words that appear in insurance policies. Id. (citing Brill v. Indianapolis Life Ins. Co., 784 F.2d 1511, 1513 (11th Cir.1986)).
Black’s Law Dictionary defines “premises” as “[a] house or building, along with its grounds.” Black’s Law DiotionaRY 1219 (8th ed. 2004). The non-legal definition is, in part, either “a tract of land with the buildings thereon” or “a building or part of a building usu. with its appurtenances (as grounds).” MerRiam-WebsteR’s Collegiate DiCtionary 980 (11th ed. 2004). Therefore, giving the word “other premises” its plain meaning, we conclude that the Mozart house qualifies.
According to the policy, the other premises must be used by the insureds as their “residence.” Although the policy does not define “residence,” it is undisputed that the Mozart property was the Harringtons’ principal residence.
The final element of “insured location” is residence property “which is shown in the Declarations.” The Declarations state in the first column that the Named Insured and Mailing Address are: “Bruce Harrington, Janet Harrington, 477 Mozart Rd.” The second column lists the Location of the Residence Premises as: “301 Vallette Way.” The Mozart property address is thus “shown in the Declarations” when one reviews the plain and unambiguous meaning of this provision element. See Castillo, 829 So.2d at 244 (explaining the policy terms “should be given their plain and unambiguous meaning as understood by the ‘man-on-the-street’ ”). Even though the Mozart property was listed as the mailing address, nothing indicates the “insured location” definition excludes such a listing. Although Citizens may not have intended for coverage to extend to the Mozart property for an injury that oc *1004 curred there and had nothing to do with the Vallette “residence premises,” the insurance policy appears to cover it, based on the plain reading of subsection (b)(1) of “insured location.”
When courts construe insurance policies, they should read the policies as a whole, thereby giving “every provision its full meaning and operative effect.” Gen. Star Indem. Co. v. W. Fla. Vill. Inn, Inc., 874 So.2d 26, 30 (Fla. 2d DCA 2004) (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000)). Additionally, “a single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders.” Id. (citing e.g. Swire Pac. Holdings, 845 So.2d at 166).
Here, Citizens, when defining “residence premises,” stated the property must be “shown as the ‘residence premises ’ in the Declarations.” Therefore, Citizens knew how to clarify what it intended and could have used a more precise term.
In Epstein v. Hartford Casualty Insurance Co., 566 So.2d 331, 334 (Fla. 1st DCA 1990), the First District held the insurance language was ambiguous and construed it against the insurer. Hartford insured the Epstein’s Cumbrian Garden residence, which met the definition of “residence premises.” Id. at 332. However, the Ep-steins’ personal property was stolen from a rental property on Huntington Forest Boulevard, where the Epsteins never lived. Id. They filed a claim under Coverage C, which covered theft; however, this provision excluded “ ‘theft that occurs off the residence premises of ... property while at any other residence....’” Id. (first alteration in original). The policy did not define “residence” in this sense — the Ep-steins argued it meant “residence” as used in “residence premises” to mean a dwelling used by the insureds as their dwelling; Hartford argued “residence” meant any dwelling house or the like intended to be used as a dwelling. Id. at 333. The court found both interpretations reasonable, the provision ambiguous, and construed it against the insurer, explaining that “Hartford could as easily have used a more precise term, but it failed to do so. The result of this failure is uncertainty as to the application of the policy exclusion to the facts of this case.” Id.
Because Citizens did not use more precise language in explaining what exactly was to be shown on the Declarations— where it used “which is shown in the Declarations” to define “insured location” but used “which is shown as the ‘residence premises ’ in the Declarations” to define “residence premises” — the provision covers the Mozart property. Citizens presumably knew how to draft the language and could have made it more precise if it so desired.
Although Citizens may not have intended the homeowner’s policy at issue to extend to the Mozart property, the Mozart property meets subsection (b)(1) of “insured location” based on the plain, unambiguous language of that definition: it qualifies as “other” premises used by the insureds as a residence and which is shown in the Declarations.
Moreover, if the language is ambiguous, the language must be construed against the drafter of the contract, Citizens, in favor of the insureds, the Harringtons. We therefore reverse the final summary judgment entered in favor of Citizens.

Reversed.

CIKLIN, J., and TOWBIN SINGER, MICHELE, Associate Judge, concur.

. Because insurance policies are often adhesion contracts, Pasteur Health Plan, Inc. v. Salazar, 658 So.2d 543, 544 (Fla. 3d DCA 1995), the ambiguities are construed against the insurer who prepared the policy. Graham v. Lloyd’s Underwriters at London, 964 So.2d 269, 274 (Fla. 2d DCA 2007).