DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**AGNES BARTSCH,**
Appellant,

v.

**JOHN COSTELLO,**
Appellee.

No. 4D14-1620

[June 17, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert E. Belanger, Judge; L.T. Case No. 2013CA568BTXXXX.

Michael Farrar, Doral, for appellant.

John Costello, Boca Raton, pro se.

WARNER, J.

Appellant challenges a final judgment in favor of appellee, an unclaimed property recovery specialist, who assisted appellant's stepdaughter in obtaining funds held by the state as unclaimed property, which were rightfully due to appellant. Appellant claims that the trial court erred in not applying strict liability and in denying her claim for declaratory judgment. We disagree and affirm.

Agnes Bartsch, appellant, and James Bartsch ("the decedent") married in 1996. They had a daughter several years later. The decedent also had a daughter from a prior marriage, appellant's stepdaughter. The decedent died in 2002, and his death certificate listed him as divorced, even though he was still married to appellant. Appellant was aware of the error but did not have the death certificate corrected.

Thomas Costello contacted the stepdaughter about eight years later, notifying her of funds in her father's name that appeared on the unclaimed property list held by the state. He entered into an agreement with her to assist her in claiming the property. Thereafter, and with Costello's assistance, the stepdaughter filed a petition for summary administration

of the decedent's estate. She alleged he had died intestate, that she was his sole heir, and that his only property consisted of $33,766.41 in two accounts being held by the Unclaimed Property Division of the Florida Department of Financial Services ("the Department"). The probate court granted the petition and issued an order of summary administration authorizing distribution of these accounts to the stepdaughter. The order was submitted to the Department, and the stepdaughter received $33,766.41.

About six months after the order was entered, appellant moved to vacate the order of summary administration on the ground that it was fraudulently obtained, since the stepdaughter had failed to disclose the existence of the decedent's other heirs: appellant and her daughter. The probate court vacated the order and ordered the appropriate distribution: 50% to appellant, 25% to the stepdaughter, and 25% to appellant's daughter. It ordered the stepdaughter and Costello "to deposit forthwith all monies [they had] received in this matter into the court registry." The court also entered a judgment against the stepdaughter for $18,571.53, the amount it found she had wrongfully obtained from the decedent's estate. Costello returned his commission to the court registry.

Appellant then filed a civil action against Costello claiming common law negligence and requesting declaratory judgment. The court later granted the parties' joint motion to substitute appellee John Costello, Thomas' son, as defendant. It appears that the father and son run an unclaimed property recovery business together.

Appellant brought the following claims. First, appellant claimed that appellee was negligent in researching the ownership of the decedent's account, because their marriage license and their child's birth certificate were both public records. She claimed that appellee was jointly and severally liable with the stepdaughter under the Florida Disposition of Unclaimed Property Act ("the Act"), which she argued "impose[d] a duty of care on all those who assist another person to receive unclaimed property" and imposed strict liability for the unclaimed property improperly appropriated by unauthorized persons. She alleged that she and her daughter were within the class of persons protected by the Act.

The count for declaratory relief alleged that "a controversy exists as to the proper interpretation of the Act, specifically the provision in § 717.1341(1), Fla. Stat. regarding joint and several liability for those who improperly assist others in obtaining unclaimed property." She requested "a declaration from the court stating that [appellee] is required under the Act to deliver the stolen money *to the Department* . . ." (emphasis supplied).

The appellee answered and denied any negligence, arguing that he relied on the death certificate which listed the decedent as divorced, as well as statements to that effect from other family members. The case proceeded to a non-jury trial, but a transcript has not been provided. We therefore must rely on the trial court's final judgment for the determination of the facts.

The court entered a judgment for appellee. In the judgment, the court found no negligence on the part of appellee in that the death certificate had listed the decedent's marital status as divorced, and this information was provided by "the decedent's own father, . . . who would presumably know whether or not his son was married." Appellee also received information from other relatives. The court further rejected appellant's claim that section 717.1341(1), Florida Statutes, created strict liability of appellee for the funds disbursed to the stepdaughter, because the statute provided for recovery by the Department, not a private person. The court reviewed various provisions of the Act referencing the Department's powers of enforcement, and concluded that the statute did not create a private cause of action.

In moving for rehearing, appellee argued she was not contending that section 717.1341, Florida Statutes, "creates a cause of action," but rather that "the statute is a basis for determining the standard of conduct[.]" The court denied rehearing, and appellant filed this appeal.

The appellant contends that the trial court erred by failing to apply a strict liability standard to appellee's conduct, pursuant to the Florida Disposition of Unclaimed Property Act, Chapter 717 of the Florida Statutes. We review the issue of the meaning of a statute *de novo*. *See generally Osborne v. Dumoulin*, 55 So. 3d 577, 581 (Fla. 2011).

A negligence claim has four elements: (1) a duty by defendant to conform to a certain standard of conduct; (2) a breach by defendant of that duty; (3) a causal connection between the breach and injury to plaintiff; and (4) loss or damage to plaintiff. *Clay Elec. Co-Op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) (quoting *Prosser & Keaton on the Law of Torts* 164-65 (W. Page Keeton ed., 5th ed. 1984)). We deal with the first element in this case. In finding no negligence on the part of appellee, the trial court applied a reasonable man standard as the duty of care. The appellee claims that the court should have applied a strict liability standard.

3

We recently discussed the various roles a statute may play in a negligence case:

> While negligence has its roots in common law, legislative enactments play an important role in shaping standards of conduct. W. Page Keeton et al., *Handbook on the Law of Torts* § 35 (3d ed. 1964). Proof that a defendant violated a statute—including a criminal statute—can be categorized in a negligence case in one of three ways, depending on the statute's purpose:
>
> (1) *violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se*; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence.

*Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. 4th DCA 2014) (emphasis added) (quoting *Chevron U.S.A., Inc. v Forbes*, 783 So. 2d 1215, 1219 (Fla. 4th DCA 2001).) "[T]he strict liability classification is a narrow one, and this is a 'group of unusual and exceptional statutes.'" *Eckelbarger v. Frank*, 732 So. 2d 433, 435 (Fla. 2d DCA 1999) (quoting *Tamiami Gun Shop v. Klein*, 116 So. 2d 421, 423 (Fla. 1959)) (finding that violation of ordinance requiring self-closing gate around swimming pool was not strict liability, but negligence per se). Normally, they "are the type designed to protect a particular class of persons from their inability to protect themselves[.]" *deJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973). Some examples are the "dog bite" statutes, statutes forbidding the sale of guns to minors, and child labor acts. *See* Thomas D. Sawaya, 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 24:11 (2014-15 ed.); Amy G. Gore, 38 Fla. Jur. 2d Negligence § 93 (2015 ed.).

Section 717.1341, Florida Statutes, which the appellant contends imposes strict liability on appellee, provides:

> (1)(a) No person shall receive unclaimed property that the person is not entitled to receive. *Any person who receives, or assists another person to receive, unclaimed property that the person is not entitled to receive is strictly, jointly, personally, and severally liable for the unclaimed property and shall immediately return the property*, or the reasonable value of the property if the property has been damaged or disposed of, *to the department plus interest* at the rate set in accordance with s. 55.03(1). Assisting another

4

person to receive unclaimed property includes executing a claim form on the person's behalf.

. . .

(2) *The department may maintain a civil or administrative action:*

(a) To recover unclaimed property that was paid or remitted to a person who was not entitled to the unclaimed property or to offset amounts owed to the department against amounts owed to an owner representative;

(b) *Against a person who assists another person in receiving, or attempting to receive, unclaimed property that the person is not entitled to receive*; or

(c) Against a person who attempts to receive unclaimed property that the person is not entitled to receive.

§ 717.1341, Fla. Stat. (2013) (emphasis added). In denying the wife recovery, the trial court found the statute "directs the immediate return of the property *to the department,* and authorizes *the department* to maintain a civil or administrative action," concluding that "liability is to the department, and not some private aggrieved party."

The fact that the statute does not provide for a statutory cause of action for a private person, however, does not foreclose the adoption of a statutory duty of care as the governing standard in a common law negligence claim. Restatement (Second) of Torts notes that, where a statute does not provide for civil liability, "the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action." RESTATEMENT (SECOND) OF TORTS § 286, Comment d; *see also Kohl,* 149 So. 3d at 134 ("One way that common law negligence evolves with changes in society is that it incorporates contemporary standards of conduct evidenced by legislative enactments.").

We are not required to adopt the strict liability standard of conduct in this case, because the legislature actually declared that the statute was not intended to be the basis of a private cause of action. The enacting legislation for section 717.1341, Section 166 of Chapter 04-390, Laws of

Florida, provides: "Nothing in this act shall be construed *to create or be the basis* of a civil action." (Emphasis supplied).

Furthermore, although appellant may fall within one class of persons the statute was designed to protect[1], that class is not made up of persons with an "inability to protect themselves," as illustrated by the facts of the present case. *deJesus*, 281 So. 2d at 201. The property at issue here--funds in two bank accounts owned by the decedent--only became "unclaimed" because appellant made no attempt to probate her late husband's estate. *See generally* § 717.106, Fla. Stat. (2013) (bank account is presumed unclaimed if owner has not deposited or withdrawn from the account, or communicated in writing with the bank regarding his interest, in five years). It was not until eight years after the decedent's death that the stepdaughter petitioned for summary administration of his estate. Moreover, it was the appellant's failure to correct the marital status on her late husband's death certificate, despite her knowledge of this error, which arguably allowed the stepdaughter to wrongfully claim the property. In general, rightful claimants like the appellant can protect their own interests by doing their due diligence and filing their own claims with the Department.

The fact that such claimants can generally protect themselves, as well as the Legislature's indication that it did not intend this Act to create a private cause of action, convince us that section 717.1341 does not impose strict liability on the appellee in this common law negligence action. We decline to adopt such a standard for purposes of a common law negligence action such as the one at issue here. *See Eckelbarger*, 732 So. 2d at 436 ("We note, however, that the strict liability classification is a narrow one, and this is a 'group of unusual and exceptional statutes.' . . . The strict liability classification bars the defendant from alleging comparative negligence.") (quoting *Klein*, 116 So. 2d at 423).

The appellant also sought a declaratory judgment. The trial court did not specifically rule on this count, other than to deny it. The trial court ruled correctly, because appellant did not have standing to pursue the

---

[1] The Act appears to be designed to protect both the interests of the rightful owners of the unclaimed property and the interests of the state. *See* § 717.139, Fla. Stat. (2013); *see also State v. Green*, 456 So. 2d 1309, 1312 (Fla. 3d DCA 1984). Generally, courts "will not adopt as the standard of conduct . . . the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively . . . to protect the interests of the state or any subdivision of it as such[.]" RESTATEMENT (SECOND) OF TORTS § 288(a).

Department's interest in seeking return of the monies to the state treasury, the relief she sought. The elements of a declaratory judgment claim are:

> [T]here is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; *that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts*; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest [sic] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

*Olive v. Maas*, 811 So. 2d 644, 657-58 (Fla. 2012) (quoting *Martinez v. Scanlan*, 582 So. 2d 1167, 1170-71 (Fla. 1991)) (emphasis added; original emphasis omitted). Appellant is not entitled to the return of the money, which must be sought by the Department. *See* § 717.1341(1)(a), Fla. Stat. (2013) ("Any person who . . . assists another person to receive[ ] unclaimed property that the person is not entitled to receive . . . shall immediately return the property . . . *to the department*[.]") (emphasis added). Thus, she is essentially seeking to enforce the rights of the Department to the money, rather than her own rights. The Department is not required to bring an action against appellee under this statute to recover the money; the subsection provides only that the Department "*may* maintain a civil or administrative action" against him. § 717.1341(2), Fla. Stat. (2013). Appellant can file a claim with the Department for return of the money in order to prompt use of section 717.1341(2) by the Department to obtain monies from appellee. *See* § 717.124, Fla. Stat. (2013) (Unclaimed property claims); Fla. Admin. Code R. 69I-20.0021 (Procedures for Filing Claim); Fla. Admin. Code. R. 69I-20.0022 (Proof of Ownership and Entitlement to Unclaimed Property). Under these circumstances, appellant has failed to show that she has standing to bring a declaratory judgment action seeking to make appellee liable to return funds for which he may be strictly liable under section 717.1341(1), Florida Statutes.

The final judgment of the trial court is affirmed.

GROSS and FORST, JJ., concur.

\* \* \*

*Not final until disposition of timely filed motion for rehearing.*